UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MARY SANDIFER, AMANDA  CIVIL ACTION
SANDIFER AND RYAN SANDIFER

VERSUS  NO. 12-322-SDD-RLB

HOYT ARCHERY, INC. ET AL.

**RULING AND ORDER ON PLAINTIFFS' MOTION TO QUASH**

Before the Court is Plaintiffs' Motion to Quash (R. Doc. 97) Defendants' Rule 45 subpoena directed to their attorney of record. Defendants filed an Opposition (R. Doc. 100) to the Motion, to which Plaintiffs responded with a Reply Memorandum (R. Doc. 103). For the reasons discussed below, Plaintiffs' Motion to Quash[1] is **GRANTED** with respect to the subpoena and **DENIED** as to the request for sanctions.

**I.  BACKGROUND**

Plaintiffs seek an order quashing Defendants' Rule 45 subpoena directed at Plaintiffs' counsel of record. Plaintiffs' attorney was served with the subpoena on March 27, 2015, which commanded him to produce "the entire file of Robert Ragsdale regarding his investigation" of the Feddersen Incident. (R. Doc. 97-3 at 7). Defendants' previously filed a Motion to Compel (R. Doc. 59) production of the same materials from Plaintiff. (R. Doc. 59-4 at 4) (subpoenaing

---

[1] Defendants' Rule 45 subpoena was issued from this Court, but commanded the production of documents in Metairie, Louisiana. Because Rule 45(d)(3)(B) directs the subpoenaed party to file any motions to quash in the court of compliance, Plaintiffs Motion should have first been filed in the Eastern District of Louisiana. However, given the length of time this litigation has been pending and its current procedural posture, in this particular circumstance the Court will treat Plaintiffs' Motion to Quash as a Motion for Protective Order under Rule 26, which would be properly filed in this Court. This will avoid any further delays caused by Plaintiffs having to re-urge their Motion in the Eastern District of Louisiana, only to have it transferred here pursuant to Rule 45.

production of Mr. Ragsdale's "entire Feddersen file" including "any letters or statements you have and any reports generated").[2]

Defendants have insisted in both their Motion to Compel (R. Doc. 59) and their current Opposition (R. Doc. 100 at 11) that an investigative file (Feddersen File) was created by Mr. Ragsdale in connection with the Feddersen Incident and that the file is in Plaintiffs' possession. Plaintiffs have consistently explained that the only document they received from Mr. Ragsdale relating to the Feddersen Incident is Mr. Ragsdale's Feddersen Report. Otherwise, the Feddersen documents that Plaintiffs provided to their other experts were produced during discovery and were not obtained from Mr. Ragsdale. (R. Doc. 78 at 3). For this reason, the Court determined that the only document at issue in Defendants' Motion to Compel was Mr. Ragsdale's Feddersen Report. (R. Doc. 78 at 3).

On July 17, 2014, the Court issued an Order denying Defendants' Motion to Compel. (R. Doc. 78). The Court first found the Feddersen Report fell "outside the scope" of mandatory expert disclosures under Rule 26(a)(2)(B) because "none of the experts currently retained in this case have reviewed the Feddersen Report." (R. Doc. 78 at 4). Otherwise the Court found the Feddersen Report was not discoverable under Rule 26(b)(1), "[g]iven that Mr. Ragsdale is no longer an expert in this case, the Feddersen Report is neither relevant nor is it likely to lead to the discovery of admissible evidence." (R. Doc. 78 at 4).

Despite this Court's previous Order, Defendants insist that the same information is now discoverable because of the following "subsequent events . . . : (1) Plaintiff's expert, Dr. Gautam Ray, offered a new opinion regarding the similarity of this accident and [the Feddersen Incident];

---

[2] A more thorough discussion of the relevant background and applicable law has already been provided by the Court in its July 17, 2014 Order (R. Doc. 78) denying Defendants' Motion to Compel.

(2) Dr. Stephen Batzer's deposition testimony regarding the Feddersen [Incident]; and (3) Plaintiff's most recent document production." (R. Doc. 100 at 1).

## II. DISCUSSION

### A. Timeliness of Subpoena

In its Order (R. Doc. 99) granting Plaintiff's Motion for Expedited Consideration, the Court explicitly instructed Defendants that their Opposition "must . . . address the timeliness of the Rule 45 subpoena at issue in light of the current" Scheduling Order deadlines. Defendants ignored the Court's order by failing to address the timeliness of their subpoena in their Opposition (R. Doc. 100). As such, they have failed to establish good cause under Rule 16 to modify the deadlines. For this reason alone, Plaintiffs' Motion to Quash must be granted because, whether the information sought by Defendants' Rule 45 subpoena is characterized as fact or expert discovery, it is untimely.

The Court's Scheduling Order established February 14, 2014 as the deadline for completing fact discovery (R. Doc. 40) and March 31, 2015 as the deadline for completing expert discovery. (R. Doc. 94). Defendants served Plaintiffs' attorney with a copy of the subpoena on March 27, 2015 and commanded the production of documents on April 15, 2015. (R. Doc. 97-3). If the subpoena constitutes fact discovery, it was untimely served over a year after expiration of the deadline. (R. Doc. 40). The same is true even if the subpoena is a request for expert discovery.

Although it was served 4 days before the expert discovery deadline, the subpoena was untimely as it required compliance outside of the March 31, 2015 deadline. In other words, the discovery was untimely because it could not have been *completed* within the expert discovery deadline. *See, e.g.*, *Dixon v. Greyhound Lines, Inc.*, 2014 WL 6474355, at *3 (M.D. La. Nov. 19,

2014) (Rule 45 subpoena seeking expert discovery was untimely despite being served within the expert discovery deadline, as the date of compliance fell outside the deadline); *Hall v. State of Louisiana*, 2014 WL at 2560715, at *1 (M.D. La. June 6, 2014) (discovery untimely as responses would be due after deadline); *Thomas v. Pacificorp*, 324 F.3d 1176, 1179 (10th Cir. 2003) (requests under Rule 34 "must be served at least thirty days prior to the completion of discovery" to be considered timely) (citing *Smith v. Principal Cas. Ins. Co.*, 131 F.R.D. 104, 105 (S.D. Miss. 1990) (time to comply with discovery requests must be within discovery deadline)); *see also Thomas v. IEM, Inc.*, 2008 WL 695230, at *2 (M.D. La. March 12, 2008) (document requests were untimely as the date for responding "would have fallen outside the [January 15] discovery deadline (i.e., thirty days from service of the Rule 34 request, or January 23, 2008)").

Although the Court instructed Defendants to address timeliness in their Opposition, Defendants ignored the Court's Order. Because Defendants failed to complete discovery within the timeframes established by this Court and there has been no showing of good cause to modify the deadlines under Rule 16,

**IT IS ORDERED** that Plaintiffs' Motion to Quash is **GRANTED** as Defendants' subpoena was untimely.

Alternatively, the Court would reach the same conclusion even if Defendants' Rule 45 subpoena were considered timely. As discussed below, the Feddersen Report is not discoverable for the same reasons stated in the Court's July 17, 2014 Order (R. Doc. 78) denying Defendants' Motion to Compel (R. Doc. 59), which concerned the same documents at issue here. Second, there is nothing to substantiate Defendants' suspicion that Plaintiffs' are in possession of an investigative file generated by Mr. Ragsdale in connection with the Feddersen Incident.

### B. Mr. Ragsdale's Feddersen Report

The Court has previously held that Mr. Ragsdale's Feddersen Report is not discoverable under Rule 26(a)(2)(B) because, "[a]s it now stands, none of the experts currently retained in this case have reviewed the Feddersen Report." (R. Doc. 78 at 4). This has not changed since the Court's previous Order. Neither Dr. Gautam Ray nor Dr. Stephen Batzer have been provided a copy of or otherwise reviewed the Feddersen Report. (R. Doc. 106-4); (R. Doc. 108-4). Mr. Ragsdale was the only expert to review the Feddersen Report. As explained by the Court's July 17, 2014 Order, because Mr. Ragsdale has withdrawn from the case and none of the remaining testifying experts have reviewed the Feddersen Report, it remains outside the scope of Rule 26(a)(2)(B).[3]

In its previous Order, the Court additionally found the Feddersen Report was not discoverable under Rule 26(b)(1). Given "the fact that Mr. Ragsdale is no longer a retained expert in this case," the Court found "the Feddersen Report is neither relevant nor is it likely to lead to the discovery of relevant evidence." (R. Doc. 78 at 78 at 5). Additionally, the Court held the Feddersen Report was not a proper or relevant basis on which to cross examine Plaintiffs' remaining experts because (1) it contained opinions rendered by an unretained expert in another matter, and (2) was not reviewed by any of Plaintiffs' remaining expert witnesses. (R. Doc. 78 at 5).

---

[3] Moreover, Defendants suggest that Mr. Ragsdale's withdrawal from this case does not make the Feddersen Report "any more or less discoverable. The facts remains: Mr. Ragsdale conducted an investigation into the Feddersen Incident, he applied his archery experience to the underlying facts, and he reached conclusions about what occurred." (R. Doc. 100 at 6). Contrary to Defendants' suggestion, it is the fact that Mr. Ragsdale used his expertise to render an opinion in another matter, but he is not a retained expert in this case, that makes the Feddersen Report "less discoverable." (R. Doc. 100 at 6). Rule 45(d)(3)(B)(ii) of the Federal Rules of Civil Procedure permits the Court to "quash or modify" a subpoena if it requires "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." The Feddersen Report falls squarely within the protection of Rule 45(d)(3)(B)(ii) and may only be obtained if Defendants show "a substantial need for the [material] that cannot be otherwise met without undue hardship; and ensure[] that the subpoenaed person will be reasonably compensated." Fed. R. Civ. P. 45(d)(3)(C)(i)-(ii). As explained by the Court, none of Defendants' arguments in favor of production are persuasive. Therefore, they have not established an undue hardship that would warrant production.

Defendants now argue that the opinions of Plaintiffs' current experts constitute a change in circumstances, warranting production of the Feddersen Report. (R. Doc. 100 at 3-10). Specifically, Plaintiffs' experts have more recently "opined about the similarity between the Feddersen and Sandifer incidents." (R. Doc. 100 at 3). According to Defendants, "Plaintiffs' mere intention of introducing the Feddersen Incident has opened the door" to any materials related to the Feddersen Incident. (R. Doc. 100 at 4). "Mr. Ragsdale's findings are germane to the alleged 'substantial similarity' between the Feddersen and Sandifer accidents" — i.e., "whether there are any factual similarities or dissimilarities between the two accidents." (R. Doc. 100 at 4-5).

Despite Defendants' representations, Plaintiffs have always been clear that they intend to present evidence of the similarities between the Feddersen Incident and the instant case. (R. Doc. 78 at 5). This very same argument was made by Defendants (R. Doc. 59-1 at 3) and rejected by the Court in connection with the Motion to Compel. (R. Doc. 78 at 5). Again, Plaintiffs have been clear that they only intend to introduce factual information regarding the Feddersen Incident — Mr. Ragsdale's expert opinions expressed in the Feddersen Report are not facts. (R. Doc. 78 at 5).

Next, Defendants suggest that the Feddersen Report is needed to cross examine Plaintiffs' testifying experts, Dr. Ray and Dr. Batzer. (R. Doc. 100 at 4-9) (arguing the Feddersen Report is needed to attack the "veracity" of Dr. Ray's opinion and the "credibility" of Dr. Batzer). Defendants raised the same argument — that the Feddersen Report was needed to cross examine Dr. Ray — in connection with their Motion to Compel. (R. Doc. 59-1 at 3). The Court rejected that argument because none of Plaintiff's testifying experts had been provided with or even reviewed a copy of the Feddersen Report. (R. Doc. 78 at 5). As the Court already

explained, Dr. Ray was not provided with a copy of Dr. Ragsdale's Feddersen Report. (R. Doc. 78 at 4-5). Therefore, the "contents of the Feddersen Report, prepared by another expert in a separate case, presumably containing that expert's opinion, and never reviewed by Dr. Ray, is not a proper or relevant basis to cross examine Dr. Ray." (R. Doc. 78 at 5).

The same is true of Dr. Batzer. Defendants suggest the Feddersen Report is needed to "expose Dr. Batzer's foundational shortcomings," as Defendants "believe that Dr. Batzer's investigation into the Feddersen Incident was woefully insufficient." (R. Doc. 100 at 8). As support for this belief, Defendants point out that Dr. Batzer "did not speak to Mr. Ragsdale, he did not read Mr. Ragsdale's deposition [or the Feddersen Report] and he did not search Mr. Ragsdale on the internet. Instead, Dr. Batzer obtained all his information about the Feddersen Incident from 'the discovery materials.'" (R. Doc. 100 at 9). Defendants' argument is not persuasive.

It is the very fact that Dr. Batzer was not provided with any materials relating to Mr. Ragsdale's Feddersen Report that places the Feddersen Report outside the realm of proper and relevant materials for cross examination. *See Glendale Federal Bank, FSB v. U.S.*, 39 Fed. Cl. 422, 426 (1997) (Deposition testimony of expert who had withdrawn from the case could "be used to cross-examine [testifying expert] Professor Fischel, only to the extent that Plaintiff can establish that the deposition testimony formed part of the underlying facts or data upon which Professor Fischel based his opinions."); *In re Richardson-Merrell, Inc. Bendectin Products Liability Litigation*, 624 F. Supp. 1212, 1227 (S.D. Ohio 1985) (where defendant's expert witness did not rely upon a particular study, that study could not be used to cross examine defendant's expert). And so, the Court **ORDERS** that Plaintiffs' Motion to Quash is **GRANTED** to the extent the subpoena seeks production of the Feddersen Report.

## C. Contents of Mr. Ragsdale's Investigative File

Plaintiffs have consistently explained that the only document provided by Mr. Ragsdale concerning the Feddersen Incident was Mr. Ragsdale's Feddersen Report. (R. Doc. 103 at 2); (R. Doc. 69 at 4-6). Otherwise the Feddersen-related documents, which were reviewed by Plaintiffs' experts Dr. Gautam Ray and Dr. Stephen Batzer, were provided by both sides during discovery. (R. Doc. 78 at 2-3); (R. Doc. 104-1 at 2); (Batzer Report, R. Doc. 106-4 at 3); (Ray Report, R. Doc. 108-4 at 4-5).

Defendants, however, insist that Mr. Ragsdale created an investigative file in connection with the Feddersen Incident, which contains materials that have not been produced by Plaintiffs, in addition to the Feddersen Report. (R. Doc. 100 at 11). Defendants base this assumption on Plaintiffs' March 25, 2015 supplemental production of documents related to the Feddersen Incident. (R. Doc. 100 at 11). The documents consist of photographs taken by the San Bernardino Sheriff's Office (R. Doc. 100-4) and an Incident Report created by the San Bernardino Sheriff's Office (R. Doc. 100-5). According to Defendants, these recent disclosures "suggest" that Plaintiffs possess undisclosed evidence from "Mr. Ragsdale's complete Feddersen File," because "Defendants cannot eliminate the distinct possibility that these materials were, in fact, compiled by Mr. Ragsdale." (R. Doc. 100 at 11). Defendants explain that they "want the opportunity to confirm the source" of these documents, and need Mr. Ragsdale's Feddersen File to do so. (R. Doc. 100 at 11).

Based on the Court's review of Plaintiffs' supplemental document production, it is clear that the source of the documents and photographs is the San Bernardino Sheriff's Office — not Mr. Ragsdale. (R. Doc. 100-4 and 100-5). Otherwise, nothing suggests that Plaintiffs received any information from Mr. Ragsdale regarding the Feddersen Incident, other than Mr. Ragsdale's

Feddersen Report. For example, during Mr. Ragsdale's deposition, when the parties originally discussed production of his Feddersen-related materials, that discussion was limited to Mr. Ragsdale's Feddersen Report. (R. Doc. 53-6 at 5). Moreover, in Mr. Ragsdale's expert report (issued before withdrawing from this case), his list of provided materials includes the same Feddersen-related documents that Plaintiffs provided to their other expert, Dr. Ray — (1) U.S. Consumer Product Safety Commission Letter Dated October 30, 2009; (2) CPSA Fact Sheet; (3) Epidemiologic Investigative Report; (4) San Bernardino County Sheriff Coroner Investigation; (5) San Bernardino County Sheriff photographic exhibits; and (6) Victor Valley Daily Press News Article on California Professor's Accident. (Ragsdale Report, R. Doc. 59-2 at 21-22); (Ray Report, R. Doc. 108-4). Therefore,

**IT IS ORDERED** that Plaintiffs' Motion to Quash is **GRANTED** to the extent Defendants seek investigative materials compiled by Mr. Ragsdale in relation to the Feddersen Incident.

Both parties are reminded, however, of their on-going obligation under Rule 26(e) to supplement their discovery responses. Should any party fail to comply with this obligation, they risk being precluded from using any undisclosed information in support of any motion or at trial. Fed. R. Civ. P. 37(c)(1).

### D.     Sanctions

In their Reply Memorandum, Plaintiffs formerly request sanctions against Defendants for issuing a subpoena requesting the same discovery at issue in Defendants' Motion to Compel and for accusing Plaintiffs' counsel of "hiding something" (R. Doc. 103 at 9). *See* Fed. R. Civ. P. 45(d)(1) (allowing for the imposition of sanctions against the issuing party who fails to take reasonable steps to avoid undue burden on the subpoenaed party). The Court has reviewed the

arguments and documents submitted by the parties. The Court understands Plaintiffs' frustrations over the documents sought by Defendants' subpoena, as much of the same issues were before the Court in Defendants' Motion to Compel. At the same time, Plaintiffs have been in possession of the documents in their supplemental production since May of 2013, but did not realize until March of 2015 that those documents had not been produced. Moreover, the documents were produced as supplemental responses to requests made during fact discovery,[4] which closed on February 14, 2014. (R. Doc. 40); (R. Doc. 100-4); (R. Doc. 100-5). Given the circumstances,

**IT IS ORDERED** that Plaintiffs' Motion to Quash is **DENIED** to the extent it seeks sanctions against Defendants. Each party will bear their own costs with respect to the Motion.

Signed in Baton Rouge, Louisiana, on June 1, 2015.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] The Court recognizes that the documents appear to be responsive to both fact and expert discovery, as they fall into two of the categories of information provided to Plaintiffs' experts, Dr. Ray and Dr. Batzer. (R. Doc. 106-4); (R. Doc. 108-4).