**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

MARY SANDIFER, ET AL.                                      CIVIL ACTION NO.

VERSUS                                                             12-322-SDD-RLB

HOYT ARCHERY, INC., ET AL.

**RULING**

This matter is before the Court on the *Motion for Summary Judgment*[1] filed by Defendants, Hoyt Archery, Inc. ("Hoyt") and Admiral Insurance Company ("Admiral") (or collectively "Defendants"). Plaintiffs, Mary Sandifer, wife of Dr. Alan Sandifer; Amanda Sandifer, daughter of Dr. Alan Sandifer; and Ryan Sandifer, son of Dr. Alan Sandifer ("Plaintiffs"), have filed an *Opposition*[2] to this motion. Defendants also filed a *Reply*[3] to which Plaintiffs filed a *Sur-Reply*.[4] The Court has considered the arguments of the parties, the entire record before the Court, and the applicable law, and finds that summary judgment is not appropriate under the facts of this case.

**I.    FACTUAL BACKGROUND**

On August 23, 2011, Dr. Alan Sandifer was killed when a component part, specifically the metal cable guard, of a Hoyt Compound Bow penetrated his left temple and became imbedded in his brain. The Plaintiffs contend that the 2007 Hoyt Vulcan XT 500 bow was defective in its design, rendering the product unreasonably dangerous

---

[1] Rec. Doc. No. 158.
[2] Rec. Doc. No. 162.
[3] Rec. Doc. No. 167.
[4] Rec. Doc. No. 170.

28213

1

giving rise to liability under the Louisiana Products Liability Act ("LPLA").[5]  Defendants contend that the subject compound bow was safe when used normally and as reasonably anticipated.  The events which led to the impalement of the guard rod in Dr. Sandifer's left temple are unknown because the incident was unwitnessed, and Dr. Sandifer never regained consciousness before succumbing to his injuries.  For this reason, various experts engaged by both parties have necessarily relied on differing factual assumptions in order to develop hypotheses as to how the accident happened and its cause.  All parties vigorously challenged the proposed experts in this case, and the Court recently addressed these challenges in its *Ruling*[6] on the *Motions in Limine*[7] filed.

The Defendants now move for summary judgment on several grounds.  First, Defendants contend Plaintiffs cannot carry their burden to establish that Dr. Sandifer was engaged in the product's "reasonably anticipated use" on the date of the accident.  Second, Defendants argue Plaintiffs have failed to carry their burden of showing that the bow was unreasonably dangerous under the LPLA because Plaintiffs offer no evidence of the risk itself, leaving a jury incapable of performing a risk/utility analysis.  Defendants also contend Plaintiffs' evidence on alternative designs is legally insufficient.  Defendants further argue that Plaintiffs lack sufficient evidence to prove the proximate cause of Dr. Sandifer's death.  Defendants claim that Plaintiffs have failed to present genuine issues of material fact in this case, and summary judgment is warranted.

---

[5] Claims related to any theory of recovery under the Louisiana Products Liability Act, except for defective design, were dismissed with prejudice. Rec. Doc. 92.
[6] Rec. Doc. No. 164.
[7] Rec. Doc. Nos. 104, 106, 108, 110, 112, & 114.

28213

2

Plaintiffs oppose the Defendants' motion offering the following primary disputed issues of material fact: (1) whether Dr. Sandifer's head was involuntarily placed in between the handle and string of his bow; (2) whether alternative designs were available in 2007 to the backwards facing unguarded tapered carbon rod featured in the bow at issue; (3) whether available alternative designs would have been burdensome on Hoyt to employ; (4) whether those alternative designs, if employed, would have affected the utility of the bow; and (5) whether those alternative designs would have saved Dr. Sandifer's life.[8] Plaintiffs further contend that they have offered sufficient evidence that Dr. Sandifer was engaged in the reasonably anticipated use of the bow, and their expert testimony supplies sufficiently plausible scenarios regarding how Dr. Sandifer's accident occurred such that a jury should decide this case. Plaintiffs also argue that they have presented sufficient evidence of alternative designs along with sufficient evidence to enable a jury to conduct the risk/utility analysis of such proposed alternatives.

The Court notes that Defendants' summary judgment motion was filed prior to the Court's *Ruling*[9] on the expert challenges. As the Court has addressed many of the parties' complaints regarding their respective experts in that opinion, the Court need not reiterate every finding in this opinion. To the extent applicable, the Court's reasoning and analysis in its previous *Ruling* is adopted herein by reference.

---

[8] Rec. Doc. No. 162, p. 2.
[9] Rec. Doc. No. 164.

28213

## II. LAW & ANALYSIS

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[11] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[12] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[13] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[14]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[15] All reasonable factual inferences are drawn in favor of the nonmoving party.[16] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the

---

[10] Fed. R. Civ. P. 56(a).
[11] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[12] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (5th Cir. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[13] *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[14] *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[15] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[16] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

28213

summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[17] "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[18]

### B. The Louisiana Products Liability Act[19]

Because subject matter jurisdiction in this case is based on diversity of citizenship, the substantive law of Louisiana governs this dispute.[20] The LPLA establishes the exclusive theory of liability for manufacturers regarding damages caused by their products. The applicable standard under the LPLA is as follows: "The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity."[21] Thus, to maintain a successful claim under the LPLA, a claimant must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous;" and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.[22]

---

[17] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[18] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[19] La. R.S. § 9:2800.51, *et seq.*
[20] *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).
[21] La. R.S. § 9:2800.54(A).
[22] *Ayo v. Triplex, Inc.*, 457 F. App'x 382, 385–86 (5th Cir. 2012)(citing *Jack v. Alberto–Culver USA, Inc.*, 949 So.2d 1256, 1258 (La.2007) (citing La. R.S. § 9:2800.54(A)).

28213

A product is "unreasonably dangerous" under the LPLA in one of four ways: (1) construction or composition; (2) design; (3) inadequate warning; or (4) failure to conform to an express warranty.[23] The "unreasonably dangerous" characteristic must exist at the time the product left the manufacturer's control or result from a reasonably anticipated modification or alteration of the product.[24] Louisiana law does not permit a factfinder "to presume an unreasonably dangerous condition solely from the fact that injury occurred."[25] Rather, the claimant has the burden of proving the required elements under the LPLA.[26]

It is undisputed that Plaintiffs' only LPLA claim is that the Hoyt bow was unreasonably dangerous in design. Under Section 9:2800.56 of the LPLA, a product is unreasonably dangerous in its design if, when the product left the manufacturer's control: (1) there existed an alternative design for the product that was capable of preventing the claimant's damage; and (2) the likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product.

This test requires a plaintiff to prove both "that an alternative design existed" at the time the product was manufactured and "that the risk avoided by using the alternative design (magnitude of damage discounted by the likelihood of its occurrence)

---

[23] La. R.S. § 9:2800.54(B).
[24] *Id*. § 2800.54(C).
[25] *Woodling v. Hubbell Inc.,* 35 F, App'x 386, *4 (5th Cir. 2002)(citing *Krummel v. Bombardier Corp.*, 206 F.3d 548, 551 (5th Cir. 2000) (quoting *McCarthy v. Danek Med., Inc.*, 65 F.Supp.2d 410, 412 (E.D.La.1999)).
[26] La. R.S. § 9:2800.54(D).

28213

would have exceeded the burden of switching to the alternative design (added construction costs and loss of product utility)."[27]

The Court now turns to a discussion of the claim elements challenged in this case.

### 1. Reasonably Anticipated Use

Defendants move for summary judgment on the ground that Plaintiffs cannot establish that Dr. Sandifer was engaged in the "reasonably anticipated use" of the compound bow as explained by the LPLA. A crucial element of Plaintiffs' burden of proof under the LPLA is to show that damage arose from a "reasonably anticipated use" and that there is a link between damages and reasonably anticipated use; if a manufacturer does not reasonably anticipate a plaintiff's use then he owes no duty to that consumer and is not responsible for any damages caused by misuse.[28] Therefore, in order to withstand the Defendants' motion, the Plaintiffs must first present evidence establishing the essential elements of reasonably anticipated use.

The standard for reasonably anticipated use is objective and is made from the standpoint of the manufacturer at the time the product was produced. The LPLA defines reasonably anticipated use as "a use or handling of the product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances."[29] This requires the Court to ascertain what uses of its product the manufacturer should have reasonably expected at the time of manufacture.[30]

---

[27] *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 701 (5th Cir. 2012) (citing *Lawrence v. Gen. Motors Corp.*, 73 F.3d 587, 590 (5th Cir.1996)).
[28] *Kampen v. American Isuzu Motors, Inc.*, 157 F.3d 306, 316 (5th Cir. 1998).
[29] La.R.S. 9:2800.53(7); *see Fielder v. Graco Children's Products Inc.*, 2006 WL 725099, *3 (W.D.La. 2006).
[30] *See Kampen,* 157 F.3d at 309; *Myers v. American Seating Co.*, 637 So.2d 771, 775 (La.App. 1st Cir.1994).

In determining whether a particular use is "reasonably anticipated," several factors may be considered: whether the injured party used the product in a manner that was obviously dangerous; what the user was instructed to do and warned not to do with respect to the use of the product; whether the use of the product was expressly warned against in the product's labeling (or operations manual); and, the language of that warning, and the sophistication and experience of the user.[31]

The Fifth Circuit addressed the breadth of "reasonably anticipated use" in *Kampen v. American Isuzu Motors, Inc.*[32] The *Kampen* court defined "reasonably anticipated" at a level of generality that took into account the risks a manufacturer must or should have reasonably contemplated when designing the product and providing warnings for its use.[33] The court further reasoned that it has consistently defined "use" to include not only the ordinary, intended use of a product, but also some of the plaintiff's negligent conduct.[34] However, the *Kampen* court also held that the manufacturer is not responsible for every conceivable, foreseeable use of its product, and reasonably anticipated use does not encompass misuses in direct contravention of a warning or where the danger should have been obvious to the experienced as well as the ordinary consumer.[35]

Defendants claim that, because Dr. Sandifer's accident was an unwitnessed event, Plaintiffs cannot present evidence that he was engaged in the reasonably

---

[31] *Benjamin v. Hausfeld,* No. 12-0020, 2013 WL 3298156 at *2 (W.D. La. June 28, 2013)(citing *Broussard v. Proctor and Gamble Co.*, 463 F.Supp.2d 596, 605 (W.D.La. 2006)(quoting *Hunter v. Knoll Rig & Equipment Manufacturing Co., Ltd.*, 70 F.3d 803, 806 (5th Cir.1995); *Lockart v. Kobe Steel Ltd. Const. Mach. Div.*, 989 F.2d 864, 866 (5th Cir.1993); *Laird v. Deep Marine Technology, Inc.*, 2005 WL 22949, *2 (E.D.La.2005); *Frith v. John Deere Co.*, 955 F.Supp. 663 (W.D.La.1996)).
[32] *See* n. 39, *supra*.
[33] *Broussard*, 463 F.Supp.2d at 605.
[34] *Id.*, citing *Kampen*, 157 F.3d at 312.
[35] *Id.* at 605-606, citing *Frith v. John Deere Co.*, 955 F.Supp. 663 (W.D.La. 1996).

28213

anticipated use of the product when his head became inexplicably positioned inside the bowstring. Defendants further claim that neither of Plaintiffs' experts has determined the most likely manner in which Dr. Sandifer was using the bow or whether such use was "reasonably foreseeable." Defendants contend that Dr. Gautam Ray's explanations as to how Dr. Sandifer's head may have become positioned inside the bowstring are plausible but not scientifically certain determinations and, thus, are insufficient. Defendants maintain that Dr. Ray provided only a possible explanation rather than the "most likely explanation."[36]

Defendants likewise maintain that Dr. Batzer did not determine how Dr. Sandifer was using his bow at the time of the accident. Defendants take issue with Dr. Batzer's proffered explanation that Dr. Sandifer may have dropped his bow with his bow hand while at a full draw as he continued to grasp the bowstring with his other hand. However, as Dr. Batzer never reconstructed this accident and conducted no tests to determine the path or final resting place of the cable guard in such a scenario, Defendants contend Dr. Batzer's conclusions are insufficient speculation. Arguing that Plaintiffs' version of the accident is based entirely on assumptions, Defendants move for summary judgment on the grounds that Plaintiffs cannot establish by a preponderance of the evidence that Dr. Sandifer was engaged in the "reasonably anticipated use" of the compound bow.

Plaintiffs counter that they can and will show that, at the time of the accident, Dr. Sandifer was engaged in the reasonably anticipated use of pulling back the string of his bow when his hand slipped, causing the allegedly defective cable guard rod to puncture

---

[36] Rec. Doc. No. 158-1, p. 7.

28213

9

his skull.[37]  Plaintiffs point to the testimony of Dr. Ray and dispute Defendants' contention that Dr. Ray failed to present the most likely explanation for Dr. Sandifer's accident: "Dr. Sandifer's head can, and most probably than not, did end up between the Bow String and cable guard rod involuntarily, (due to inertial force) leading directly to his death via penetration of the brain's soft tissue by the Cable Guard."[38]  Plaintiffs identify the myriad of information considered by Dr. Ray in reaching his conclusions based on purely biomechanical reasons that his theory of what happened to Dr. Sandifer is the most probable.

The Court has reviewed the record evidence presented on this issue and finds that Defendants are not entitled to summary judgment on the issue of reasonably anticipated use.  The Court finds that Dr. Ray did positively conclude that his explanation for Dr. Sandifer's accident was the most probable one based on his expertise.  The Court finds that there are a few equally plausible scenarios as to how this accident occurred such that a jury should conclude which explanation satisfies the preponderance of the evidence standard.  The Court also rejects any contention by Defendants that expert testimony is required to prove reasonable anticipated use.  In *Malbrough v. Crown Equip. Corp.*, the Fifth Circuit found that "no language or provision of the statute requires that a cause of action alleging a design defect must, as a matter of law, be supported by expert testimony." [39]  The court found that "there may be cases in which the judge or jury, by relying on background knowledge and common sense, can fill in the gaps in the plaintiff's case, and thus undertake the utility balancing

---

[37] Rec. Doc. No. 162, p. 5.
[38] Rec. Doc. No. 162-3, p. 9 (Report of Dr. Gautam Ray).
[39] 392 F.3d 135, 137 (5th Cir. 2004).

28213

10

required by the LPLA without the aid of expert testimony."[40]  Furthermore, the Court notes its prior ruling that: "In this case, as with scores of other unexplained events, assumptions are necessary. The very nature of scientific methodology involves assumptions a/k/a hypotheses, deriving predictions from them as logical consequences. The validity of the assumption can be adequately tested on cross-examination."[41]

The Court finds that a reasonable jury could find that Dr. Sandifer was engaged in the reasonably anticipated use of the bow. As the Fifth Circuit has stated: "[t]he issue of reasonably anticipated use should have been left for our presumptively trustworthy, traditional fact-finder: the jury."[42]  Such is true in this case, as well. Defendants are not entitled to summary judgment on this issue.

### 2. Proximate Cause

Defendants contend Plaintiffs have not come forward with summary judgment evidence that the cable guard rod on the Hoyt bow was the proximate cause of Dr. Sandifer's death. Defendants claim that "the cable guard rod did not 'cause' Dr. Sandifer's death; it was merely the instrumentality. The 'cause' of Dr. Sandifer's death was his head becoming positioned inside the drawn bowstring."[43]  Defendants further contend that neither of Plaintiffs' experts can establish Dr. Sandifer's most likely use of the bow at the time of the accident. Citing to Dr. Ray's testimony, Defendants argue that no reasonable jury could conclude that a defect in the bow caused Dr. Sandifer's head to become positioned inside the drawn bowstring. In addition, Defendants claim

---

[40] *Id.* (citations omitted).
[41] Rec. Doc. No. 164, p. 12.
[42] *McDaniel v. Terex USA, L.L.C.*, 466 F. App'x 365, 374 (5th Cir. 2012).
[43] Rec. Doc. No. 158-1, p. 20.

28213

11

that Plaintiffs cannot eliminate product misuse by a preponderance of the evidence, *i.e.*, that Dr. Sandifer did not "volitionally place his head inside the drawn bowstring."[44]

In response, Plaintiffs submit they will establish at trial that it was not the position of Dr. Sandifer's head that caused his death; "rather, it was the backwards facing unguarded tapered carbon cable guard rod that penetrated his skull and brain."[45] Plaintiffs rely heavily on the testimony of Dr. Gautam Ray, Ph.D, who holds Bachelor's and Master's degrees in Mechanical Engineering, a Ph.D in Engineering Mechanics and Biomechanics from Penn State University, and is a tenured Professor of Engineering at Penn State University.[46] Plaintiffs point to Dr. Ray's testimony regarding the "impulsive motion" of Dr. Sandifer's head while drawing the bow:

> Now, at this point, if the front left hand is released, okay – and by released, I mean not intentionally just by taking the handout and drawing it, but by kind of slipped out, if you will, okay, inadvertently. Then the cable guard, if you called them in the front, is open now. It's ready to move backwards towards the head of Sandifer because of the drawback you have. That's the only way you can move it.
>
> And while it is moving – and which I am going to go into detail, perhaps later – due to the industrial force, the head will also move forward and then because of the forward movement of the head and backward movement of the handle, including the cable guard, would meet each other at the temple location and where the cable guard entered.[47]

Plaintiffs also point to Dr. Ray's testimony regarding the likely rotational movement of Dr. Sandifer's head in the sequence of events leading to the accident.[48]

Plaintiffs also take issue with Defendants insistence that they must eliminate product misuse. Plaintiffs contend that their burden is only to prove, by a

---

[44] *Id.* at 23.
[45] Rec. Doc. No. 162, p. 30.
[46] *See* Rec. Doc. Nos. 108-4 and 140-1, pp. 1-3.
[47] Rec. Doc. No. 162-5, p. 3, Deposition of Gautam Ray, Ph.D, p. 60, lines 8-24.
[48] *Id.* at pp.20-21, Deposition of Gautam Ray, Ph.D, pp. 103-104.

28213

12

preponderance of the evidence, that the most probable cause of the accident causing Dr. Sandifer's death was the defective design of his compound bow. With the testimony of Drs. Batzer and Ray, Plaintiffs contend they will prove that, more probably than not, Dr. Sandifer's head was involuntarily placed into the path of the defectively designed cable guard rod. Moreover, Plaintiffs argue that a reasonable juror could easily conclude from the evidence in this case that Dr. Sandifer did not intentionally place his head into the space at issue during the accident.

The Court finds that "reasonable minds could reach different conclusions" regarding the precise cause of Dr. Sandifer's accident.[49] Although other causes, including Dr. Sandifer's potential misuse, may be possible, they do not seem so technical that Plaintiffs' theories are unacceptably speculative. Plaintiffs have produced sufficient evidence to meet their burden, and the Court finds that a genuine issue of material fact remains regarding causation. Additionally, the Court has denied Defendants' challenges to both Dr. Ray's and Dr. Batzer's qualifications, expertise, and methodology. Further, the Court has already held that Dr. Ray reached his conclusions regarding "inertial force" and "inertial motion" by applying common engineering principles.[50] Viewing the evidence in the light most favorable to the Plaintiffs, the Court finds sufficient evidence in the record from which a reasonable jury could conclude that the allegedly defective cable guard rod was the proximate cause of Dr. Sandifer's death.

3. <u>Unreasonably Dangerous in Design: Alternative Design and Risk/Utility</u>

The Defendants also claim that Plaintiffs have failed to submit summary judgment evidence that the bow is unreasonably dangerous in design. The Defendants

---

[49] *See Cangelosi v. Our Lady of the Lake Regional Medical Center*, 564 So.2d 654, 666 (La. 1989).
[50] *See* Rec. Doc. No. 164, p. 12.

28213

13

note that the only alleged defect is the design and location of the cable guard on the bow. The Defendants contend that it would be impossible for the jury to conduct a risk/utility analysis because Plaintiffs have failed to offer evidence of an alleged risk. Defendants maintain that Dr. Sandifer's death is insufficient to prove the existence of an alleged risk because it is an isolated event, and Plaintiffs have failed to offer any statistical evidence of the likelihood of such an occurrence. Defendants contend that Dr. Batzer's testimony is not only pure speculation, but it also fails to address the likelihood of injury.

Defendants also challenge Plaintiffs' proffered alternative designs, arguing that Plaintiffs fail to offer evidence regarding the burden of the alternatives on the manufacturer and the negative impact that the alternative designs could have on the utility or safety of the product. While Dr. Batzer calculated how repositioning the cable guard would change the horizontal angles between the cable and the cams,[51] the Defendants contend that, without further testing or analysis, Dr. Batzer's conclusion is insufficient to meet Plaintiffs' burden. Defendants note that Dr. Batzer's report does not address how redesigning the cable guard rod would affect bow accuracy, durability, arrow velocity, or cam lean. Defendants contend the same problem exists with respect to Plaintiffs' rubber bumper alternative design. Defendants claim Plaintiffs cannot simply assert that the alternative designs would not impact the bow's utility or safety; rather, they must provide evidence of this in order for the jury to conduct the balancing test. Because Plaintiffs have failed to produce this evidence, Defendants argue they cannot satisfy this burden on this issue.

---

[51] Rec. Doc. No. 158-4, p. 11.

28213

14

Defendants further posit that reference to other existing compound bows fails to meet Plaintiffs burden because it fails to address the reasons why different compound bows exist. Defendants argue that, like most products, compound bows have different designs, configurations, dimensions, and performance features which archers evaluate to determine which bow meets their needs. Defendants claim Plaintiffs have ignored all features relating to a compound bow's utility or safety other than the simple ability to shoot an arrow. Furthermore, Defendants claim that Dr. Batzer has conducted no analysis to determine whether these alternative compound bows had the same level of reliability, accuracy, or arrow velocity as Dr. Sandifer's bow. Defendants argue that "[m]erely pointing at pictures of other compound bows does not allow the jury to conduct a proper balancing test."[52]

Finally, Defendants contend Plaintiffs are not aided by the Fedderson Incident[53] to show a risk as the Fedderson Incident involved a different model bow; never resulted in a judgment, lawsuit, or claim; and was unwitnessed. Defendants claim that, because the Fedderson Incident occurred after Dr. Sandifer purchased his bow, evidence relating to the Fedderson Incident cannot aid the jury in this case in conducting the risk/utility balancing test particularly because, by the time Hoyt knew of the Fedderson Incident, Dr. Sandifer had owned his bow for more than 2.5 years.

The Court has already ruled that Dr. Batzer does not need to be an expert in the field of archery and compound bow design, and that Dr. Batzer is qualified to give an

---

[52] Rec. Doc. No. 158-1, p. 19.
[53] On June 9, 2008, Mr. Fedderson was killed in his home when the cable guard of his Hoyt compound bow became inexplicably imbedded in his left temple. Throughout this litigation, evidence pertaining to Mr. Fedderson's accident and death is referred to as "the Fedderson Incident." The Court denied Defendants' *Motion in Limine* to exclude evidence of the Fedderson Incident in its previous *Ruling*, Rec. Doc. No. 164.

28213

opinion regarding the mechanical design of products, particularly the alternative design regarding the compound bow at issue herein. The Court's previous *Ruling* noted that Fifth Circuit jurisprudence contains no "bright line requirement that proffered alternative designs must be built and tested in order to satisfy the requirement that an expert's opinion be reliable."[54] Moreover, the Court noted that "Dr. Batzer's principal alternative design … has already been commercially produced by the Defendant. Feasibility of this alternative design has, thus, been ostensibly established."[55] The Court adopts its reasoning and analysis set forth in the previous *Ruling*,[56] finding that there is sufficient evidence of alternative designs to the product at issue such that a reasonable jury is capable of performing the risk/utility balancing test. Summary judgment is not appropriate in this case.

### III. CONCLUSION[57]

For the reasons set forth above, and because material fact issues abound in this case, the Defendants' *Motion for Summary Judgment*[58] is DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on <u>August 28, 2015</u>.

*[Signature: Shelly D. Dick]*

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[54] Rec. Doc. No. 164, p. 8.
[55] *Id.* at p. 9.
[56] Rec. Doc. No. 164.
[57] The Court has considered all of the arguments of the parties whether or not specifically addressed herein.
[58] Rec. Doc. No. 158.

28213