UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MARY SANDIFER, AMANDA SANDIFER SANDIFER & RYAN SANDIFER | : | CIVIL ACTION NO. 3:12-CV-00322 |
| VERSUS | : | JUDGE: SHELLY D. DICK |
| HOYT ARCHERY, INC. & ABC INS. CO. | : | MAG. RICHARD L. BOURGEOIS |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTIONS *IN LIMINE* REGARDING DR. GAUTAM RAY**

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs, **MARY SANDIFER, AMANDA SANDIFER AND RYAN SANDIFER**, who oppose what have been erroneously styled by Defendant as Motions *In Limine* [Rec. Docs. 213, 214 and 215] concerning Dr. Gautam Ray for the following reasons and in the following particulars.

**I.  INTRODUCTION**

On January 8, 2016, the Defendant, **HOYT ARCHERY, INC.** filed several pleadings that were styled as Motions *In Limine* concerning Plaintiffs' expert in biomechanics and biomechanical engineering, Dr. Gautam Ray.  As Plaintiffs have already explained to the Defendant by way of correspondence seeking that the Motions be voluntarily withdrawn, there are several glaring and blatant problems with the Motions.

First, although styled as Motions *In Limine* these motions are clearly *Daubert* Motions as they seek to deal with, *yet again*, the basis for Dr. Ray's scientific opinions and his methodology. This is highly problematic because the deadline set by this Honorable Court for such Motions has long since passed [i.e., May 8, 2015, Rec. Doc. 94].  That they have been re-branded/re-packaged

1

as Motions *In Limine* does not change that fact that their filing seeks an end-run around a deadline set by this Court.

Secondly, and most troublesome, Dr. Ray has already been the subject of a host of extremely extensive *Daubert* Motions and other largely similar and purely derivative Motions filed by **HOYT** previously. Plaintiffs' counsel has already spent extensive time and resources responding to these Motions and this Honorable Court has already spent its time and resources carefully reviewing said Motions and *issuing a ruling on each of them*. In short, the very same issues raised, *yet again,* by **HOYT** have already been considered and rejected by this Court. These current Motions fly both in the face of this Court's established Scheduling Order and its rulings on these issues.

Plaintiffs ask that these Motions be denied, and, under the circumstances, that the Court grant any other relief which may be equitable and appropriate.

## II.    THE MOTIONS MAY WELL BE MOOT

As the Court has now been made aware, Plaintiffs' critical expert in the areas of biomechanics/biomechanical engineering, Dr. Gautam Ray, has been diagnosed with and hospitalized for a Stage IV, terminal brain tumor. According to his family, he will almost certainly not survive and will, regardless, be retiring from his post as a tenured professor at Penn State University and from all consulting work. Plaintiffs have filed a Motion To Continue asking that this Court continue the currently set trial for the very limited purpose of obtaining a replacement expert in that field [Rec. Doc. 216]. Plaintiffs have also filed a supplemental Motion under seal, showing paperwork sent from the family confirming Dr. Ray's diagnosis and severe condition [Rec. Doc. 223].

Unfortunately for Plaintiffs, they have had a similar setback occur once before in this case.

2

Plaintiffs' initial expert in bow design and engineering (Robert Ragsdale) resigned from the case for valid personal and health reasons. Just as it has done here, and despite the expert having left the case, **HOYT** still filed a slew of *Daubert* Motions regarding not just Mr. Ragsdale, but also regarding Dr. Ray. When faced with these Motions, this Court ruled that, given the proposed expert had left the case and would not testify at trial, those Motions were **moot** [Rec. Doc. 58].

Although Plaintiffs do not presume to predict how this Court will rule on Plaintiffs' Motion To Continue, given previous precedent, if the Court does grant the continuance, then, as before, these Motions would presumably be held to be moot as well.

### III.   THE MOTIONS ARE CERTAINLY UNTIMELY

On January 20, 2015, this Honorable Court issued its most recent Scheduling Order regarding the deadlines for completion of expert discovery and the filing of *Daubert* Motions [Rec. Doc. 94]. The Order clearly and unequivocally sets a deadline of May 8, 2015 for the submission of Daubert Motions (i.e., those dealing with the supposed lack of qualifications and/or flawed methodology and/or lack of foundation for the opinions of proposed experts).

Fed. R. Evid. 702 governs the admissibility of expert witness testimony. See also *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588, 113 S. Ct. 2786, 2794, 125 L. Ed. 2d 469, 480 (1993). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

The United States Supreme Court's decision in the *Daubert* case (*supra*) "provides the

analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.* 288 F. 3d 239, 243 (5th Cir. 2002). Both pure scientific, non-scientific (e.g. expert lawyer in a legal malpractice case) and applied scientific (e.g., engineering expert) testimony is subject to the *Daubert* framework. That framework requires trial courts to make preliminary assessments "to determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); see also, *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct 1167, 1174, 143 L. Ed. 2d 238, 249-50 (1999).

In response to the deadline for this kind of Motion, **HOYT** took the opportunity to file an extensive *Daubert* Motion regarding Dr. Ray [Rec. Doc. 108]. Further, **HOYT** also filed a lengthy Motion for Summary Judgment [Rec. Doc. 158], which essentially regurgitated the same arguments made in its *Daubert* Motions. The current "Motions *In Limine*" offer the same, albeit, abbreviated arguments. There is no question that the current "Motions *In Limine*" are nothing more than rehashed *Daubert* Motions. The deadline for such Motions has long since passed.

As noted elsewhere, Plaintiffs have attempted to have Defendants voluntarily withdraw its Motions without involving this Honorable Court. As part of the correspondence in connection with that attempt, Defendants have essentially argued that their Motions are not *Daubert* Motions and yet admit, and reiterate, for instance, that the nature of their objection to Dr. Ray's testimony on "more forceful", is based on his supposed lack of *calculations* and supposed lack of "**basis in science**" [Exhibit A, emphasis added]. Plaintiffs submit such a Motion is unequivocally a *Daubert* Motion (and thus untimely).

### IV. THIS COURT HAS ALREADY RULED MULTIPLE TIMES ON THESE ISSUES

This Honorable Court took the Defendant's *Daubert* Motions and Motion for Summary

Judgment under advisement and ruled *against each of them* in turn [Rec. Doc. 164 and 176].

As noted above, the currently filed Motions *In Limine* are nothing more than another abbreviated attempt at a *Daubert* challenge despite, and in the face of, both this Court's deadlines and its previous rulings.

As one example of many, in **HOYT'S** current "Motion *In Limine* #3" [Rec. Doc. 215], **HOYT** argues, that Dr. Ray should not be able to testify that Dr. Sandifer's hand likely slipped from his bow thereby initiating the terrible sequence of events that befell him [see, e.g., Rec. Doc. 215, p. 4]. **HOYT** attempted this **exact same argument,** on the same grounds, in its previously filed *Daubert* Motion *and* Motion for Summary Judgment. This Honorable Court reviewed these arguments and has already come to the following conclusion:

> "Defendant challenges Dr. Ray's assumption that the bow slipped from the decedent's hand as indicative of improper methodology. Unfortunately, the subject accident was unwitnessed. No one knows the events which produced the consequence. One possible explanation is that the decedent lost his grip on the bow which set off a sequence of events and motion that Ray explains by application of the scientific theory of inertial force. The Defendant will offer an opposing expert who makes other assumptions. In this case, as with scores of other unexplained events, assumptions are necessary. <u>The very nature of the scientific methodology involves assumptions a/k/a hypotheses, deriving predictions from them as logical consequences.</u> The validity of the assumption can be adequately tested on cross-examination. The Court's role as a gatekeeper does not replace the traditional adversary system and the place of the jury in that system." [Rec. Doc. 164, pp.12-13 citations omitted, emphasis added].

This Court's ruling could not have been any clearer or more unequivocal. And, yet, **HOYT** continues to beat its head against the wall with the same arguments hoping for a different outcome. Such an attempt, again, flies in the face of This Court's Orders and, Plaintiffs believe, represents a willing disregard and disrespect for both this Court and its officers. Making this even more egregious, is that, in a letter attached as [Exhibit A] to this Opposition, <u>Defense counsel fully</u>

5

<u>admitted that the Court had already ruled on this issue</u> and yet, by the time of the filing of this Opposition (which is due today), and in spite of Plaintiffs' repeated requests that they do so, **HOYT** has not formally withdrawn its Motions, thereby requiring a needless formal response and a waste of everyone's time.

Likewise, **HOYT** argues in it's Motion *In Limine* #3 [Rec. Doc. 215] that Dr. Ray was not qualified to opine on what constituted reasonably anticipated use of the compound bow. It further argues that Dr. Ray did not testify that his version of events was the most likely. In addition to being part of an untimely *Daubert* Motion in the thinnest of disguises, these arguments have also already been addressed by this Court.

As just part of its extensive Ruling on **HOYT'S** Motion for Summary Judgment, this Honorable Court found:

> "The Court has reviewed the record evidence presented on this issue and finds that Defendants are not entitled to summary judgment on the issue of reasonably anticipated use. **The Court finds that Dr. Ray did positively conclude that his explanation for Dr. Sandifer's accident was the most probable based on his expertise.** The Court finds that there are a few equally plausible scenarios as to how this accident occurred such that a jury should conclude which explanation satisfies the preponderance of the evidence standard. <u>The Court also rejects any contention by Defendants that expert testimony is needed to prove reasonably anticipated use</u>...Furthermore, the Court notes in its **prior ruling [in this case]**: "In this case, as with scores of other unexplained events, assumptions are necessary..." [Rec. Doc. 176, pp.10-11, emphasis added].

Thus, not only has the Court ruled on these issues, but it has ruled enough times where it is able to **reference its own previous rulings on the subject** *in other rulings*.

In another example, Defendant again argues that Dr. Ray should not be able to use "character" traits of Dr. Sandifer to bolster his opinions [Rec. Doc. 215]. This argument was raised <u>already</u> in Defendant's Reply in Support of its Motion for Summary Judgment [ Rec. Doc. 167]. As

6

Plaintiffs proved in their response [Rec. Doc. 170], Dr. Ray did not rely on "character" evidence in coming to his opinions. Instead, he relied upon uniform testimony regarding Dr. Sandifer's *habits* as fully allowed by Fed. R. Evid. 406. This Court, again, denied Defendant's original Motion for Summary Judgment in full [Rec. Doc. 176]. It must be noted again, however, that such a Motion attacking the foundation of an expert's opinions falls squarely into the category of *Daubert* Motions making this Motion untimely as well.

In a separate Motion *In Limine* (#4) [Rec. Doc. 213], **HOYT** argues again with the methodology and foundation for Dr. Ray's opinions. This time, it is argued separately that Dr. Ray lacks foundation in his opinion that the forcefulness of the impact was greater in the scenario that Dr. Ray found to be most probable (i.e., the involuntary placement of the head between the bow's riser and string) than in that found to be the most probable by the Defendant's expert, Dr. Alfred Bowles, (i.e., that Dr. Sandifer voluntarily placed his head in that area). Again, this attack on Dr. Ray's methodology is a thinly veiled *Daubert* Motion which was untimely filed. Further, this Court, has yet again, addressed the foundation for Dr. Ray's opinions.

As put by the Court in its denial of the Defendant's timely filed actual *Daubert* Motion:

"In this case, Ray reached his conclusion by applying common engineering principals of 'inertial force' or 'inertial motion'. Defendant does not advance any meaningful argument that 'inertial force' is not a widely recognized, generally applied scientific principle. Dr. Ray's deposition reveals that the concept of 'inertial force' is derived from Newton's Third Law of Gravity. Defendant's argument that Ray's inertial opinion is 'not based on biomechanics' is likewise misplaced" [Rec. Doc. 164, p.12].

As with each of the other issues, Dr. Ray's methodology has already been examined extensively by this Court and found to pass *Daubert* scrutiny. It bears repeating that Dr. Ray will not be testifying at the trial of this matter due to terminal cancer. However, in theory, the subject of

these "Motions *In Limine*" should be addressed in vigorous cross-examination.

### V.  PLAINTIFFS AND DEFENDANT HAVE ALREADY REACHED A STIPULATION ON WARNINGS AND THE COURT HAS ALREADY RULED ON IT

Defendants have filed with this Court, a Motion *In Limine* (# 6) [Rec. Doc. 214] seeking to preclude Dr. Ray from addressing the issue of what he *initially* testified were shortcomings in **HOYT'S** owner's manual for the subject bow.

This Motion *In Limine* fully and additionally demonstrates the utter lack of respect for the time of both Plaintiffs' counsel and This Court in the filing of these Motions.  As the Court may remember, Plaintiffs and **HOYT**, worked out, long ago, a *stipulation* regarding the dismissal of all other LPLA claims in this matter besides for design defect, including, all those issues related to warnings and recall.  Based on the stipulation, and the Motion filed to that effect, this Honorable Court has *already ruled* that the only claim that will be addressed at the trial of this matter is that of design defect [Rec. Doc. 96].  It should be further noted that Dr. Ray, *himself*, in his second sworn deposition, verbally confirmed that warnings were no longer an issue in this matter [Exhibit B, Ray 02-06-15 Depo., pp.174-175]

Despite the *stipulation* of the parties, confirmation in sworn deposition, and the Ruling of this Court, **HOYT** has filed a needless Motion *in Limine* asking that Dr. Ray's initial opinions on the owner's manual (i.e., a *warnings* issue) not reach the jury.  This has already been accomplished and is inappropriate for yet another time-consuming Motion.  Plaintiffs ask that this Motion be declared moot and that the Court take whatever equitable action it feels appropriate for the abuse of this Court's time and the time of its officers.[1]

---

[1] In response to a letter from Plaintiffs' counsel's requesting that the Motions be withdrawn [Exhibit A], Defense counsel essentially stated that since it was already settled by stipulation, couldn't the Plaintiffs simply

## VI.  PLAINTIFFS HAVE REQUESTED THAT THE MOTIONS BE VOLUNTARILY WITHDRAWN

In an effort to resolve conflicts of this kind amicably and without wasting the Court's time, Plaintiffs' counsel sent counsel for Defendant a letter reminding counsel that the Motions *In Limine* they recently filed were most likely moot, were certainly untimely, and were already ruled upon by the Court.  Plaintiffs' counsel asked that the Motions be voluntarily withdrawn [Exhibit C].  Defense counsel responded to that letter [Exhibit A] as discussed above.  Plaintiffs' counsel wrote the Defendant back on January 13, 2016 [Exhibit D].   As of the time of this filing, **HOYT** has refused to withdraw these frivolous Motions.

## VII.  CONCLUSION

The Defendant in this matter has recently filed a number of Motions styled as "Motions *In Limine*" [Rec. Docs. 213, 214 and 215].  In reality, these Motions are nothing more than *Daubert* Motions.  The subject of these Motions, Dr. Gautam Ray, is terminally ill and cannot testify at the trial of this matter.  This is known to the Defendant.  In the event of a continuance, these Motions will likely be declared moot.

Even if the Motions are not moot, they are untimely.  This Court's deadline for this kind of Motion passed long ago [i.e., on May 8, 2015].  Yet the Defendant has still chosen to file them.

Finally, even if not moot and untimely, the Defendant has already attempted the very same arguments reflected in the "new" Motions previously, and this Court has already ruled against them.

These Motions are frivolous and the Plaintiffs ask that they be (again) denied.  Plaintiffs also

---

concede in the Motion.  Plaintiffs feel that this is inappropriate as the Motion should not have been filed in the first place.  However, out of further professional courtesy, Plaintiffs *again* confirmed to **Hoyt** that even if Dr. Ray was able to testify as trial (which he isn't) that he would not be testifying on warnings, including the manual [Exhibit D].  Despite all of this, at the time of the filing of this Opposition, **Hoyt** has not withdrawn its Motions.

ask for any other equitable relief that the Court deems appropriate under the circumstances.

Baton Rouge, Louisiana, this **15TH** day of **JANUARY**, **2016**.

>Respectfully submitted by:
>
>deGRAVELLES, PALMINTIER, HOLTHAUS & FRUGE', LLP
>
>    *s/J. Neale deGravelles*
>**J. NEALE DEGRAVELLES** (#**29143**)
>618 Main Street, Baton Rouge, LA 70801
>Telephone: (225) 344-3735 : Facsimile: (225) 336-1146
>E-mail:  ndegravelles@dphf-law.com
>Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing **Plaintiffs' Opposition To Defendant's Motions In Limine Regarding Dr. Gautam** Ray has this day been forwarded to **Bruce Cranner, Ryan Davis, Jonathan Menuez and Joseph Guichet** via the Court's electronic filing system.

Baton Rouge, Louisiana, this **15TH** day of **JANUARY**, **2016**.

>    *s/J. Neale deGravelles*
>**J. NEALE DEGRAVELLES** (#**29143**)